Josephine Ngaruiya G.
PO Box 7027
Mesa, AZ 85214
P: 424.410.0684.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

**JOSEPHINE NGARUIYA,**
Plaintiff,

v.

**Wells Fargo Bank, N.A.,**
Defendant.

Case No. ___**CV26-01336-PHX-SHD**___

COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. This is an action for employment discrimination, retaliation, unequal pay, hostile work environment, and unlawful interference with protected employment benefits.

2. Plaintiff was subjected to severe and pervasive sexual harassment, national origin discrimination, pay discrimination, and escalating retaliation after engaging in protected activity under federal law.

3. Title VII provides:

"It shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race… sex… or national origin."

— 42 U.S.C. § 2000e-2(a)(1)

1

4. Title VII further prohibits retaliation against an employee because she:

"has opposed any practice made an unlawful employment practice… or has made a charge… under this subchapter."

— 42 U.S.C. § 2000e-3(a)

5. Plaintiff brings this action pursuant to Title VII, the Equal Pay Act, 42 U.S.C. §1981, ERISA §510, and related federal statutes.

## II. JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. §1331.

7. Venue is proper in this District under 28 U.S.C. §1391 because the unlawful employment practices occurred in Arizona.

## III. PARTIES

8. Plaintiff is a resident of Arizona and was employed by Defendant from February 3, 2013, until April 14, 2020.

9. Defendant Wells Fargo Bank, N.A. is a national banking institution headquartered in San Francisco, California, operating in the State of Arizona, an employer within the meaning of Title VII and the Equal Pay Act

10. Defendant **Taju Payne** was a manager at Wells Fargo responsible for supervising Plaintiff and engaged in the harassment and retaliation alleged.

11. Defendant **John Williams** was an Assistant Vice President and Payne's supervisor, participated in adverse employment actions against Plaintiff and was complicit in the retaliatory conduct.

## IV. PROCEDURAL HISTORY

12. Plaintiff filed a **complaint with the EEOC** in August 2018, alleging discrimination and retaliation by Wells Fargo.

13. Plaintiff received a **Right-to-Sue Notice** from the EEOC.

14. Plaintiff filed her initial complaint in this Court within 90 days of receiving the Right-to-Sue Notice.

15. The Court dismissed the prior action **without prejudice** on January 28, 2026, after nearly two years of delay, and declined to allow further amendment.

16. Plaintiff now **refiles promptly**, within a reasonable period, and asserts that **equitable tolling** applies due to extraordinary circumstances, including hospitalization, trauma, and loss of personal property, which prevented timely legal advocacy.

## V. EQUITABLE TOLLING

17. In June 2022, Plaintiff was involuntarily hospitalized and remained institutionalized for approximately one hundred and seven days.

3

18. During this period, Plaintiff lost access to her home, possessions, legal files, and employment records.

19. Plaintiff suffered severe psychological trauma and was classified as mentally disabled during this period and long after discharge.

20. Equitable tolling applies where a litigant has pursued her rights diligently, but extraordinary circumstances prevented timely filing. *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 435 (1965).

21. The Ninth Circuit recognizes that mental incapacity and severe psychological trauma justify tolling. *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).

22. Plaintiff regained stability and competency in early 2025 and has diligently pursued her claims since that time.

23. Procedural dismissal, mental incapacity and Extraordinary circumstances beyond Plaintiff's control prevented earlier filing. Tolling is therefore warranted.

## VI. FACTUAL ALLEGATIONS

24. Plaintiff began employment at Wells Fargo as a loan underwriter in 2013.

25. Plaintiff was laid off in 2014 and rehired in 2015 for a similar position.

26. During her employment at Wells Fargo, Plaintiff performed her job **competently** and met expectations.

27. Plaintiff filed several formal complaints of sexual harassment, harassment and retaliation with Wells Fargo HR starting in **November 2017 through May 2018** against **Payne and Williams**; complaints were closed as "unfounded."

28. Following HR's dismissal of Plaintiff's complaints against Williams, Williams Fabricated a write-up in February 2018 stating Plaintiff had attached a female she didn't know, on the hallway, creating a false record to justify adverse employment action.

29. The Fabricated writeup blocked plaintiff from transferring out of the department for one year and took away her annual raise which averaged about ten thousand dollars.

30. Human Resources upheld the write-up without any supporting factual information.

31. These actions were taken in **retaliation for Plaintiff engaging in protected activity** and asserting her rights under Title VII.

32. Defendants subjected Plaintiff to **adverse employment actions**, including minimal raises (**Nov 2017 and Mar 2018**) despite Plaintiff being a top producer.

33. Plaintiff became aware in March 2018 that certain lower-performing colleagues were **receiving higher compensation/raises** than she was, despite similar or lesser job performance and filed a claim of continuing harassment against Williams. These claims were closed as "unfounded."

34. On or about **August 2018**, Plaintiff filed a **complaint with the EEOC** regarding discriminatory pay practices and retaliation.

5

35. Approximately **two weeks after filing the EEOC complaint**, Wells Fargo issued Plaintiff an **impromptu raise**, acknowledging the discrepancy.

36. Following the EEOC complaint, Plaintiff experienced **adverse employment actions**, including but not limited to:

a)  Hostile work environment

b)  Retaliation

c)  Differential treatment compared to similarly situated employees

37. These actions were **causally linked** to Plaintiff's protected activity, i.e., filing an EEOC complaint.

## VII. PROTECTED ACTIVITY

38. Plaintiff filed an EEOC Charge on August 1, 2018.

39. Filing an EEOC charge constitutes protected activity under 42 U.S.C. §2000e-3(a).

## VIII. CLAIMS FOR RELIEF

## COUNT 1

## Sexual Harassment/Hostile work environment

40. Beginning in 2015, Plaintiff's supervisor subjected her to daily stalking, leering, sexually suggestive gestures, and physically intimidating behavior.

41. The harassment was **severe or pervasive**, altering the terms and conditions of employment.

42. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) (hostile work environment standard) **42 U.S.C. § 2000e-2(a)(1)**

43. The Supreme Court defines hostile work environment as conduct "sufficiently severe or pervasive to alter the conditions of employment."

    — *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

44. Defendant failed to take corrective action despite repeated complaints.

# COUNT II

## National Origin Discrimination

45. A senior manager publicly stated: "Let Josephine take that food home, she's the one that's from Africa."

46. This constitutes direct evidence of discriminatory animus.

# COUNT III

## A. Equal Pay Discrimination

47. Plaintiff consistently ranked among top performers.

48. Lower-performing Caucasian coworkers received higher raises (2–3%) while Plaintiff received only 1%.

49. In or about 2017 and 2018, Plaintiff received approximately 1% raises, while lower-performing coworkers received raises of 2–3%.

50. Plaintiff and these coworkers performed the same underwriting functions under the same standards.

51. The pay disparity was not based on seniority, merit, or production.

52. Such conduct violates 29 U.S.C. §206(d)(1).

53. The Equal Pay Act provides:

"No employer… shall discriminate… between employees on the basis of sex by paying wages… at a rate less than the rate at which he pays wages to employees of the opposite sex… for equal work…"

— 29 U.S.C. §206(d)(1)

### A. The Impromptu Raise After EEOC Filing

54. Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 1, 2018, alleging sex discrimination, national origin discrimination, unequal pay, sexual harassment, and retaliation in violation of Title VII and the Equal Pay Act.

8

55. Within approximately two weeks of Defendant receiving notice of Plaintiff's EEOC charge, Defendant issued an internal communication announcing that select employees would receive an unexpected mid-cycle or "off-cycle" raise.

56. Plaintiff was among the employees selected for this raise.

57. During Plaintiff's prior six years of employment, Defendant had never issued Plaintiff any impromptu or off-cycle raise outside the standard annual review process.

58. Plaintiff alleges that this sudden wage increase was not performance-based, but rather an attempt to narrow or conceal the disparity between Plaintiff's compensation and that of similarly situated Caucasian coworkers who performed at lower levels yet received higher percentage raises.

59. The timing of this corrective wage adjustment—immediately following Plaintiff's protected activity—constitutes circumstantial evidence of discriminatory compensation practices and pretext.

60. Under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973), once a plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for its actions. The plaintiff may then demonstrate that the proffered reason is pretextual.

61. Evidence that an employer altered compensation practices immediately after protected activity supports an inference that prior pay decisions were discriminatory or that the employer sought to mitigate liability exposure.

62. Temporal proximity between protected activity and materially related employment action is sufficient to establish causation at the pleading stage. See *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that adverse actions occurring within months of protected activity support inference of retaliation).

63. Defendant's issuance of a corrective raise shortly after Plaintiff filed her EEOC charge constitutes probative evidence that (a) Plaintiff's compensation had previously been discriminatorily suppressed, and/or (b) Defendant acted in anticipation of liability.

64. The Ninth Circuit recognizes that timing alone can support causation. *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987).

## COUNT IV

## RETALIATION

65. Plaintiff engaged in protected activity by reporting harassment to HR and filing an EEOC charge.

66. Defendants retaliated by issuing false write-ups, limiting raises, obstructing her work, subjecting her to a hostile work environment and interfering with benefits.

67. After filing her EEOC charge, Plaintiff experienced:

- Increased scrutiny
- Fabricated disciplinary write-ups

10

- Hostile work environment

- Denial of bonuses

- Withholding of raises

- Termination

68. The Ninth Circuit has held that temporal proximity between protected activity and adverse action supports causation. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 507 (9th Cir. 2000).

69. Adverse actions occurring within months of protected conduct establish prima facie retaliation. *Yartzoff*, 809 F.2d at 1376.

70. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

— *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

71. Plaintiff's termination on April 14, 2020, occurred shortly after renewed complaints and request for transfer.

72. Close timing combined with prior antagonism supports retaliatory motive. *Porter v. California Dep't of Corrections*, 419 F.3d 885 (9th Cir. 2005).

73. Defendant's shifting justifications further demonstrate pretext. See *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

74. Legal Authority: *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) - 42 U.S.C. § 2000e-3(a)

## COUNT V

## ERISA INTERFERENCE

75. ERISA §510 prohibits discrimination against a participant "for the purpose of interfering with the attainment of any right."

— 29 U.S.C. §1140.

76. Plaintiff's 401(k) account lost approximately $10,000 **within seven days** in February 2019 under suspicious circumstances.

77. Plaintiff's 401(k) contributions were mishandled or stolen by Wells Fargo, resulting in loss of retirement benefits.

78. Plaintiff seeks recovery of lost contributions, investment losses, and damages.

79. Defendant refused to pay earned bonuses and compensation tied to retirement contributions.

## COUNT VI

**Title VII Discrimination**

80. Plaintiff experienced **gender-based and/or other protected-class discrimination** in pay and employment treatment, creating a disparate impact compared to similarly situated employees.

81. Defendant's actions were **willful, intentional, and discriminatory**.

12

## COUNT VI

**Wrongful Termination**

82. Plaintiff was terminated April 14, 2020, shortly after returning from FMLA leave for **solely on an email sent to the EEOC**, which contained customer information (address) that should have been redacted in accordance with policy.

83. Wells Fargo violated its **own risk management policies**, the employment contract, and retaliated against Appellant for engaging in **protected activity** under **Title VII**.

84. This termination followed Plaintiff's April 1, 2020, complaint to HR requesting transfer away from harassing supervisors.

85. This termination was **retaliatory**, as it also occurred immediately after Plaintiff raised concerns about her missing annual bonus and raise for the previous year which she had earned.

86. Termination constitutes unlawful retaliation under Title VII and interference under ERISA.

87. Termination Shows a causal link to complaints

88. Plaintiff was ultimately terminated by Wells Fargo in retaliation for reporting harassment and discrimination.

89. The termination violated Title VII's prohibition on retaliation.

## VIII. CAUSES OF ACTION

   a) **COUNT I** – Sexual Harassment/Hostile work environment (Title VII)

   b) **COUNT II** – National Origin Discrimination (Title VII & §1981)

   c) **COUNT III** – Equal Pay Act Violation

   d) **COUNT IV** – Retaliation (Title VII)

   e) **COUNT V** – ERISA §510 Interference

   f) **COUNT VI** – Title VII Discrimination

   g) **COUNT VII** – Wrongful Termination

Plaintiff incorporates all prior allegations.

## IX. DAMAGES

Plaintiff seeks:

1. Back pay

2. Front pay

3. Compensatory damages

4. Punitive damages (42 U.S.C. §1981a)

5. Liquidated damages under the Equal Pay Act

6. Restoration of retirement losses

7. Pre- and post-judgment interest

8. Attorneys' fees (42 U.S.C. §2000e-5(k))

9. Any other relief the court deems just and proper

## X. LEAVE TO AMEND

90. Plaintiff respectfully requests that the Court **grant leave to amend this Complaint** to include additional facts, claims, or parties that may be revealed through discovery. Consistent with **Fed. R. Civ. P. 15(a)(2)**, leave to amend should be freely given "when justice so requires," and Plaintiff intends to promptly supplement this Complaint as necessary to fully present all claims and evidence.

91. Denial of leave to amend at this stage would **prejudice Plaintiff**, as additional facts may emerge through discovery that support the claims asserted herein.

## JURY DEMAND

92. Plaintiff demands trial by jury.

Respectfully Submitted,



Josephine Ngaruiya.

Dated this 25th day of February 2026

Signature of Plaintiff, Self-Represented Party

15



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website:

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/08/2024

**To:** Josephine Ngaruiya
6632 W Adams Street
PHOENIX, AZ 85043

Charge No: 540-2018-03912

EEOC Representative and email:     JEREMY YUBETA
Enforcement Manager

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 540-2018-03912.

On behalf of the Commission,

For, Rayford O. Irvin
Acting Phoenix District Director

**Cc:**
Kristina Brown
Wells Fargo Legal Department
100 W. Washington Street Mail Code S4101-142
Phoenix, AZ 85003

Christopher Jison
Wells Fargo Bank
90 S 7th St., 9th Floor
Minneapolis, MN 55402

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to                                           .

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:

                                    .

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at                                           (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 540-2018-03912 to the District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690

Phoenix, AZ 85012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 540-2018-03912 to the District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690

Phoenix, AZ 85012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to

For more information on submitted Section 83 requests, go to



*EXHIBIT*

*B*

**ARIZONA**
— DEPARTMENT OF —
**ECONOMIC SECURITY**

Department of Economic Security
Family Assistance Administration
P.O. Box 19009
Phoenix, AZ 85005

| |
|---|
| **Case Number:** 05795684 |
| **Notice Number:** F100 |
| **Notice Date:** <u>October 28, 2025</u> |
| **Program:** Nutrition Assistance (NA) |

Josephine Ngaruiya
Po Box 9021
Mesa, AZ 85214

*① For Financial ②*
*Assistance.*
*- Court*
*Fees ☆.*

## NUTRITION ASSISTANCE (NA) APPROVAL NOTICE

Dear Josephine Ngaruiya,

### BENEFITS APPROVED

We processed your application for Nutrition Assistance (NA) turned in on <u>October 14, 2025</u>. We have approved you for NA benefits.

You will get NA benefits from <u>October 2025</u> to <u>September 2026</u>.

### YOUR BENEFITS AMOUNT

Your household will get $173.00 for <u>October 2025</u>.  Starting in <u>November 2025</u>, you will get $298.00 on the 7th day of the month.

### HOW TO GET YOUR BENEFITS

Your NA benefits will be placed on your Electronic Benefits Transfer (EBT) card. If you do not have an EBT card, you can call 1 (888) 997-9333 to ask for one. The TTY/TDD number for the hearing impaired is 1 (800) 367-8939.

### IMPORTANT – REPORTING CHANGES

You must report any changes listed below by the 10th day of the month following the month the change occurs.

- When the gross income for your household totals more than $1696 per month. Gross income is the amount of your income before any deductions.

- When you are an able-bodied adult between the ages of 18 and 64 with no dependent children, you must report if your work hours are decreased below 80 hours per month. - When any household member receives lottery or gambling winnings of $4500 or more in a single game.

### HOW TO REPORT CHANGES

**CASE NAME: JOSEPHINE NGARUIYA     CASE NUMBER: 05795684        DATE OF NOTICE: 10/28/2025**
Page 1 of 3



**ARIZONA**
—— DEPARTMENT OF ——
**ECONOMIC SECURITY**

- Online at myfamilybenefits.azdes.gov or healthearizonaplus.gov
- Mail your change to PO BOX 19009, Phoenix, AZ 85005.
- Fax your change to (602) 257-7031 or toll free to 1 (844) 680-9840.
- In person at any Department of Economic Security, Family Assistance Administration office.
- Call 1 (855) 432-7587, Monday – Friday, 7:00 a.m. to 6:00 p.m.
  The TTY/TDD number for the hearing impaired is 7-1-1.

## MID APPROVAL CONTACT (MAC)

Since you are approved for a 12 month approval period, we will send you a Mid Approval Contact (MAC) form halfway through your approval period. You must answer all questions on the form, sign the form, and turn it in or your benefits will be stopped.

## WHO IS INCLUDED IN YOUR NUTRITION ASSISTANCE HOUSEHOLD

| CLIENT NAME | DATE OF BIRTH |
|---|---|
| NGARUIYA, JOSEPHINE | 08/17/78 |

## HOW YOUR MONTHLY BENEFITS WERE DETERMINED

We used your household's income of      $0.00 and your household's deductions of      $0.00 to figure out the NA benefits your household will get each month.

## WHAT TO DO IF YOU HAVE QUESTIONS

- Go online to myfamilybenefits.azdes.gov or healthearizonaplus.gov for more information about appointments, the status of your application, benefits, and eligibility.
- Call 1 (855) 432-7587 Monday - Friday, 7:00 a.m. to 6:00 p.m.
  The TTY/TDD number for the hearing impaired is 7-1-1.
- In person at any Department of Economic Security Family Assistance Administration office.

## WHAT TO DO IF YOU DO NOT AGREE WITH THIS DECISION

You may appeal by:
- Filling out the Hearing Request form included with this notice and return it in person at any Department of Economic Security, Family Assistance Administration office. Or fax to (602) 257-7058, (602) 257-7056, or (602) 257-7055.
- You may call (602) 771-9019 or toll free at 1 (877) 525-9990.
- Mail your request to:
     Department of Economic Security
     P O Box 19009
     Phoenix, AZ 85005-9009
- Go online to www.healthearizonaplus.gov and sign into your account.
You can request your benefits to continue pending an appeal, but you may have to pay back the benefits you were not entitled to get.

## FREE LEGAL HELP

You may contact COMMUNITY LEGAL SERVICES at WWW.CLSAZ.ORG or 800-852-9075.

**CASE NAME: JOSEPHINE NGARUIYA    CASE NUMBER: 05795684          DATE OF NOTICE: 10/28/2025**



**ARIZONA**
—— DEPARTMENT OF ——
**ECONOMIC SECURITY**

## QUALITY CONTROL REVIEW

Cases are selected for quality control review. If your case is selected, you will receive a notice from the Office of Program Evaluation to arrange an interview. If you do not comply with the review, your NA benefits may stop.

## RULES WE USED TO MAKE OUR DECISION

- Who is in your household: 7 Code of Federal Regulations (CFR): section 273.1;
- Sponsor income: 7 CFR section 273.4 ©;
- Income and deductions: 7 CFR section 273.9;
- Determining household eligibility and benefit levels: 7 CFR section 273.10;
- Action on households with special circumstances: 7 CFR section 273.11;
- Changing benefits without notice if your CA or TPEP application is approved: 7 CFR section 273.13(b)(6); and
- Claims against households; overpayments: 7 CFR section 273.18.

## WHERE TO FIND THE RULES

You can find these rules at any of the following:
  - At a public library and
  - On the Internet at CFR: www.ecfr.gov/.

---

In accordance with federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex (including gender identity and sexual orientation), religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity.  Program information may be made available in languages other than English.  Persons with disabilities who require alternative means of communication to obtain program information (e.g., Braille, large print, audiotape, American Sign Language), should contact the agency (state or local) where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339.  To file a program discrimination complaint, a Complainant should complete a Form AD-3027, USDA Program Discrimination Complaint Form which can be obtained online at: www.usda.gov/sites/default/files/documents/ad-3027.pdf, from any USDA office, by calling (833) 620-1071, or by writing a letter addressed to USDA.  The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation.  The completed AD-3027 form or letter must be submitted to: mail: Food and Nutrition Service, USDA 1320 Braddock Place, Room 334, Alexandria, VA 22314; or fax: (833) 256-1665 or (202) 690-7442; or email: FNSCIVILRIGHTSCOMPLAINTS@usda.gov
This institution is an equal opportunity provider.

Este aviso se refiere a la información importante acerca de sus beneficios, los plazos cortos para pedir una Audiencia y la manera de seguir recibiendo beneficios si usted está en desacuerdo con nuestra decisión. Llame de inmediato al DES al 1 (855) 432-7587 y DES le leerán este aviso a usted en español.

**CASE NAME: JOSEPHINE NGARUIYA    CASE NUMBER: 05795684**          **DATE OF NOTICE: 10/28/2025**
**Page 3 of 3**